## GUENIFFET *v.* WICTORSOHN.

---

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; DISCLOSURE.

1. The claim by the junior party to an interference involving the invention of automatic mechanism for making tubular mouth pieces for cigarettes, that the invention was introduced in this country prior to the date of the granting of a French patent to the senior party, is not supported by evidence that the senior party showed the junior party's agent in a factory in Paris a machine embodying the invention, and explained its operation to him, and that such agent arrived in this country eight days prior to the granting of the French patent, bringing with him a number of cigarettes made on the machine, but said nothing about the machine or its product until after the date of the granting of such patent.

2. *Semble,* The act of Congress of March 3, 1903, extending the time from seven to twelve months within which an application must be filed in this country, after the filing of a foreign application for the same invention, does not operate retroactively, and therefore does not apply to applications pending at the date of its passage. (Citing *De Ferranti* v. *Lyndmark, ante,* p. 417.)

3. Whether either of the parties to an interference will ultimately have a right to a patent under his pending application will not be determined in the interference proceeding, which involves solely the question of priority of invention.

No. 458. Patent Appeals. Submitted January 24, 1908. Decided February 11, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Arthur C. Fraser* and *Mr. Domingo A. Usina* for the appellants.

*Mr. M. B. Philipp* and *Mr. C. J. Sawyer* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal by appellants, Julien Gueniffet, Anatole Benoit, and Jules Nicault, from the decision of the Commissioner of Patents awarding to appellee, Alexander Wictorsohn, a priority of invention of the machine in controversy. The issues involved in the interference proceeding in the Patent Office are as follows:

"1. The combination of means for fringing one end of mouth pieces, and bending tongues on said fringe, with means for rolling up said mouth pieces, with the bent tongues extending inwardly.

"2. The combination of means for feeding wrapper tubes with rolled mouth pieces therein, with a concave guide and a cylinder coacting therewith to slightly unroll the mouth pieces.

"3. In combination in a cigarette machine, means for feeding the mouth-piece paper, means for fringing the same, and means for rolling the fringed papers.

"4. Means for forming mouth pieces for cigarettes, said means including, in combination, a hollow casing, a rod arranged to turn in the interior of said casing, and an eccentric portion on said rod, forming a nipper for gripping the paper against the inner periphery of the casing by the turning movement of said rods.

"5. In a machine for making mouth pieces for cigarettes, the combination of means for producing both teeth or serations at one edge of a piece of paper, and for bending up said teeth, and means for rolling said paper to form a mouth piece with said teeth projecting into its interior."

The invention in question relates to an automatic mechanism

for the manufacture of a tubular mouth piece for cigarettes, and for inserting the same into the wrapper of the cigarette in such manner as to prevent tobacco from passing from the cigarette into the smoker's mouth.

The parties are all residents of foreign countries. Appellee filed his application in the Patent Office January. 9, 1901, and appellants filed theirs May 9, 1901. Each of the parties has secured foreign patents on the invention in question, appellants' being a French patent dated January 26, 1901, on an application filed October 27, 1900. Appellee secured a French patent dated September 25, 1900, on an application filed June 13, 1900. Appellee also filed an application for patent on the same invention in Austria on June 5, 1900, upon which patent was issued December 27, 1901.

It appears that appellee was in possession of this invention at least as early as September 25, 1900, as disclosed by the French patent. This is leaving out of consideration any earlier possession that may be disclosed by the Austrian patent. Inasmuch as in an interference proceeding the only question involved is that of priority of invention, it is unnecessary to determine the respective rights of the parties to patents under their pending applications. It is therefore incumbent upon the appellants to establish themselves in possession of this invention prior to September 25, 1900. Certainly no disclosure or reduction to practice abroad can be claimed by them prior to this date, since their earliest foreign filing date was October 27, 1900, more than a month subsequent to the issuance of the French patent to appellee.

It is urged on behalf of appellants that the invention was introduced into this country by one Julius N. Jaros, their agent, September 17, 1900, eight days prior to the granting of appellee's French patent. On this point, we think the evidence fully supports the conclusion of the Commissioner, which is as follows: "It appears that Julius N. Jaros was in Paris from May to September, 1900, and during this time visited the Decouple works a number of times, where appellee was employed, who showed him a machine embodying the issue in controversy. He

states that he saw it in operation, and that the mechanism was fully explained to him. It further appears that he left Paris for New York, arriving on September 17, 1900, bringing with him a number of cigarettes which had been made with appellee's machine. It appears that after his arrival he said nothing about this machine, or the product manufactured by it, to anyone, prior to December, 1900, when he had a conference with his brother, Alfred L. Jaros. It is unnecessary to consider what was disclosed to the latter at this time, as it is subsequent to the date of Wictorsohn's French patent. Alfred L. Jaros testified that his brother wrote him from Paris in May or June regarding the machine in question, but it does not appear that the mechanism was described in these communications, and they were destroyed before the testimony was taken. Appellants rely solely, therefore, for an introduction of the invention into this country prior to September 25, 1900, upon the knowledge possessed by Julius N. Jaros at the time of his arrival in New York." If Jaros remembered what he saw in Paris, such knowledge on his part, in the absence of disclosure to others or reduction of the invention to practice by himself within a reasonable time, would not be equivalent to an introduction of the invention into this country. It does not appear from the evidence that Jaros either possessed sufficient knowledge to enable him to construct the machine in question, or to have given one skilled in the art sufficient information to have enabled him to construct it. Neither does it appear that appellee acquired any knowledge of the invention from appellants.

It is contended by counsel for appellants that, since appellee filed his application in this country more than seven months after the filing of his application in Austria, the Austrian application, which ripened into a patent, erected a bar against the issuance of any patent to appellee in this country. This contention is answered by counsel for appellee by conceding that, though appellee's application was filed seven months and four days after he filed his application in Austria, and was therefore barred from maturing into a patent under the law as it then existed; that, under the act of Congress of March 3, 1903,

the limitation within which an application must be filed here after the filing of a foreign application for the same invention was extended from seven months to twelve months, and that by operation of law his application was revived, and he is entitled to proceed to patent under the present law. To so interpret the act of March 3, 1903, would be to make it apply to applications pending at the date of its passage. This court has decided in the present term that the act of March 3, 1903, cannot be construed to operate retroactively, and therefore does not apply to applications pending at the date of its passage. *De Ferranti* v. *Lyndmark,* No. 439 [ante, p. 417.]

The only question, however, involved in this interference proceeding, being one of priority of invention, it is unnecessary to determine what right either of the parties ultimately may have to a patent under their pending applications. The decision of the Commissioner of Patents, so far as this proceeding is concerned, must be affirmed. The clerk is directed to certify these proceedings, as required by law.          *Affirmed.*